UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MANUEL BARBOSA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 12-231M |
| | : | |
| MORTGAGE ELECTRONIC | : | |
| REGISTRATION SYSTEMS, INC.; | : | |
| PRIME MORTGAGE FINANCIAL, INC.; | : | |
| and CITIMORTGAGE, INC., | : | |
| | : | |
| Defendants. | : | |

**DEFENDANT CITIMORTGAGE, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant CitiMortgage, Inc. ("CMI") submits this memorandum of law in support of its

*Motion for Summary Judgment* ("*Motion*") against Plaintiff Manuel Barbosa ("Plaintiff").   No

genuine issue of material fact exists as to the following points:

- Plaintiff lacks standing to challenge the mortgage assignment at issue;

- The assignment at issue complied with Rhode Island law;

- CMI can foreclose because the mortgage at issue granted Mortgage Electronic Registration Systems, Inc. ("MERS") and its successors and assigns the ability to invoke the statutory power of sale;

- Plaintiff is in default of the mortgage and note and thus subject to foreclosure by CMI; and

- CMI has standing to foreclose.

Summary judgment should therefore enter for CMI.

## PROCEDURAL HISTORY

Plaintiff filed his *Complaint for Declaratory Judgment and Injunctive Relief* ("*Complaint*") on or about March 28, 2012, naming MERS and CMI as defendants.  [Dkt. # 1.] The *Complaint* is a form complaint filed in cases such as this by attorneys within Babcock Law Offices.

This matter was referred to the special master program shortly after the *Complaint* was filed.  It remained with the special master until this court removed it therefrom on or about March 26, 2014.  CMI filed its *Answer* on or about April 25, 2014.  [Dkt. # 10.]  MERS moved to dismiss on or about April 25, 2014, [Dkt. # 11], and that motion remains pending.  CMI now moves for summary judgment.

## STATEMENT OF UNDISPUTED FACTS

**I.    The Promissory Note and *Mortgage*.**

1.    On or about March 17, 2006, Plaintiff executed a promissory note in the principal amount of $259,921.00 in favor of Prime Mortgage Financial, Inc. ("Prime") to evidence a loan of even amount (the "*Note*").  *Declaration of Jeanne Pezold* at ¶ 3 and Exh. A-1.[1]

2.    On or about the same date, and as security for repayment of the *Note*, Plaintiff granted a mortgage to MERS, as nominee for Prime and Prime's successors and assigns ("*Mortgage*"), encumbering real property located at 45 Appleton Avenue, Pawtucket, Rhode Island 02860 (the "Property").  *Pezold Decl.* at ¶ 4 and Exh. A-2.

3.    The *Mortgage* indicates that it was recorded in the Land Evidence Records for the City of Pawtucket ("Land Records") on or about March 20, 2006.  *Pezold Decl.* at ¶ 4 and Exh. A-2.

4.    The *Mortgage* states that MERS is acting "solely as nominee for the Lender, as

---

[1] The *Pezold Decl.* and all exhibits thereto are attached hereto as Exhibit A.

hereinafter defined, and Lender's successors and assigns…." Exh. A-2 at p.1.   The *Mortgage* also specifically states:

> Borrower does hereby mortgage, grant and convey **to MERS** (solely as nominee for Lender and Lender's successors and assigns) **and to the successors and assigns of MERS**, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale, the following described property located in the City of Pawtucket, Providence County, Rhode Island: SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF which has the address of 45 Appleton Avenue, Pawtucket, Rhode Island 02860.

*Id.* (emphasis added).  The *Mortgage* further provides:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but . . . MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender . . . .

*Id.*

5.      The *Mortgage* states that upon invocation of the statutory power of sale, a copy of the notice of sale shall be mailed to the mortgagor, and the sale shall be published and the property sold "in the manner prescribed by applicable law."  Exh. A-2, at ¶ 18.

6.      Plaintiff does not dispute *via* the *Complaint* that he received the $259,921.00 loan or that he executed the *Note* and *Mortgage*.  (*See generally, Complaint*.)

**II.      Travel of the *Note* and *Mortgage*.**

7.      On or about July 13, 2010, MERS assigned the *Mortgage* to CMI ("*Assignment*").  *Pezold Decl.* at ¶ 5 and Exh. A-3.

8.      The *Assignment* was recorded in the Land Records on or about July 23, 2010.  *Id.*

9.      According to the face of the *Assignment* itself, Kim Krakoviak signed the *Assignment* on MERS' behalf in her capacity as "Assistant Secretary" of MERS.  *Id.*

10.     Neither MERS nor CMI has challenged the validity of the *Assignment* in any way, and CMI does not intend to challenge the validity of the *Assignment*. *Pezold Decl.* at ¶¶ 6-7.

11.     Possession of the *Note* was transferred to Citibank, N.A. ("CBNA") on or about March 24, 2006.  CBNA has had possession of the Note at all relevant times on behalf of CMI and maintains possession thereof for CMI, the entity that owns the Note. *Pezold Decl.* at ¶ 8.

12.     CBNA still has possession of the *Note*, which is endorsed in blank. *Id.*

13.     CMI has serviced the *Mortgage* for itself since 2006. *Id.* at ¶ 10.

**III.     Foreclosure Process.**

14.     Plaintiff has been in default on his obligations under the *Note* and *Mortgage* since March of 2010, because he has failed to make the required payments thereunder since that time. *Id.* at ¶ 11 and Exh. A-4 (*Consolidated Note Report* (payment history), entries dated 030910 through 040710 showing absence of regular mortgage payment during the month of March 2010).

15.     Thus, CMI's right and ability to invoke the statutory power of sale described in the corresponding *Mortgage* was first triggered at that time. *Id.* and Exh. A-2.

16.     Plaintiff's current total outstanding indebtedness under the *Mortgage* and *Note*, as of June 6, 2014, is approximately $280,787.40. *Pezold Decl.* ¶ 12.

17.     Of that total outstanding indebtedness of $280,787.40, $22,483.69 represents the approximate amount that CMI has paid towards Plaintiff's property taxes and insurance through June 6, 2014. *Pezold Decl.* ¶ 13.

18.     Plaintiff has never cured his default and remains in default as of the date of this *Motion*. *Pezold Decl.* ¶ 14.

19.     Plaintiff is subject to foreclosure under the *Mortgage*.  *Pezold Decl.* ¶ 15.

20.     As a result of the filing of this lawsuit, foreclosure notices have not yet been sent to the Plaintiff.  *Pezold Decl.* ¶ 16.

## STANDARD OF REVIEW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P.* 56 (a).  An issue of fact is only "genuine" if it "may reasonably be resolved in favor of either party."  *York v. Day Transfer Co.*, 525 F. Supp. 2d 289, 294 (D.R.I. 2007).  A fact is "material" only "when it possesses the capacity, if determined as the nonmovant wishes, to alter the outcome of the lawsuit under the applicable legal tenets."  *Id.*

The moving party bears the initial responsibility of informing the court "of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may meet its burden by demonstrating an absence of evidence to support the nonmoving party's case.  *Rochester Ford Sales, Inc. v. Ford Motor Co.*, 287 F.3d 32, 38 (1st Cir. 2002).   The burden then shifts to the nonmovant, who, to avoid summary judgment, must demonstrate by competent evidence the existence of issues of fact that are both genuine and material to its claim.  *United States v. Citizens Bank*, 50 F. Supp. 2d 107, 109 (D.R.I. 1999).  For each issue, the nonmoving party "must present definite, competent evidence to rebut the motion."  *United States v. One Parcel*, 960 F.2d 200, 204 (1st Cir. 1992).  Failure to satisfy that burden compels the Court to enter summary judgment on the moving party's behalf.  *Id.*

**ARGUMENT**

The legal issues relevant to CMI in this case have all been resolved repeatedly in CMI's favor.  *See Clark v. Mortg. Elec. Registration Sys., Inc.*, CA 12-802-M, 2014 WL 1259954 (D.R.I. Mar. 27, 2014); *Bucci v. Lehman Bros. Bank, FSB*, 68 A.3d 1069, 1073 (R.I. 2013), *Mruk v. Mortg. Elec. Registration Sys., Inc.*, 82 A.3d 527 (R.I. 2013), *Rutter v. Mortg. Elec. Registration Sys., Inc.*, 86 A.3d 381, 382 (R.I. 2014); *Moura v. Mortg. Elec. Registration Sys., Inc.*, 90 A.3d 852 (R.I. 2014).

The *Complaint* includes a "Declaratory Judgment" claim (Count I), a "Quieting Title" claim (Count II) and a "Punitive Damages" claim (Count III).  CMI is entitled to summary judgment as to all three counts because Plaintiff lacks standing to contest the *Assignment* in the first place and, in any event, MERS assignments, such as the *Assignment* here, have repeatedly been upheld as facially valid under Rhode Island law.  Thus, at the time when Plaintiff filed suit, CMI held the *Mortgage* and was also acting on behalf of the holder of the *Note*.  It is undisputed that Plaintiff is in default under the *Mortgage* and *Note*, and that CMI currently has standing to foreclose under Rhode Island law.  Nothing more is required.

I.  **CMI IS ENTITLED TO SUMMARY JUDGMENT ON COUNT I (DECLARATORY JUDGMENT).**

A.  **Plaintiff Lacks Standing to Challenge the *Assignment* Because Its Alleged Defects Would Only Render It Voidable, Not Void.**

Plaintiff lacks standing to challenge the *Assignment*.  A mortgagor lacks standing to sue under Rhode Island law if "he or she raises challenges to an assignment that make it merely voidable at the election of one party but otherwise effective to pass legal title."  *Clark,* 2014 WL 1259954 at *4; *see also Era v. Morton Cmty. Bank*, CA 11-455-M, 2014 WL 1265699 at *3 (D.R.I. Mar. 28, 2014); *Mruk*, 82 A.3d at 536.  Instead, to have standing, a borrower must

challenge that the "mortgage contract or assignment is void, ineffective or invalid…." *Clark*, 2014 WL 1259954, at *4.

The determination of whether standing exists thus requires "an inquiry to determine whether a plaintiff's allegations are that a mortgage assignment was void, or merely voidable." *Id.* (quoting *Wilson v. HSBC Mortg. Servs., Inc.*, 744 F.3d 1, 9 (1st Cir. 2014)). *Wilson*, cited with approval in *Clark*, recently observed that, in the wake of *Culhane* (and *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 354 (1st Cir. 2013) (applying Massachusetts law)), void contracts are those "that are of no effect whatsoever; such as are a mere nullity, and incapable of confirmation or ratification." *Wilson*, 744 F.3d at 9 (quoting *Allis v. Billings*, 47 Mass. 415, 417 (1843)). Voidable contracts, by contrast, are those "injurious to the rights of one party, which he may avoid at his election." *Id.* (quoting *Ball v. Gilbert*, 53 Mass. 397, 404 (1847)). *Wilson* held that the borrower in that case lacked standing because his challenge was essentially to the manner in which the assignment was executed by the MERS representative, including whether it was "robo-signed." *Id.* at 11-14.

*Clark* similarly held that *Wilson's* void versus voidable analysis is in accord with Rhode Island law. *See Clark*, 2014 WL 1259954, at *4-7 (examining Rhode Island law at length, comparing First Circuit law, and stating that "there is nothing in the [First Circuit] opinions that would make the rationale any different under Rhode Island law).[2] The Supreme Court of Rhode Island recently stated its agreement with the manner of standing analysis set forth in *Wilson*. *Moura*, 90 A.3d at 856-57.

---

[2] The Supreme Court of Rhode Island's recent decision in *Moura* (May 16, 2014) thus clarifies that its decision in *Chhun v. Mortg. Elec. Registration Sys., Inc.*, 84 A.3d 419 (R.I. 2014) is not controlling as it concerns the standing analysis, and resolves any confusion related thereto in favor of the Defendants in this case.

Here, even assuming the allegations of the *Complaint* to be true, Plaintiff has not alleged and cannot prove anything more than a potentially <u>voidable</u> assignment.[3]  Plaintiff's challenges are focused on whether the *Assignment* was properly executed.  But, as discussed *infra*, Section B.4., because the recorded *Assignment* is self-authenticating and, as such, the authority of the person therein named is established, it follows *per force* that such *Assignment* would be merely voidable, and <u>not</u> void, even *if* the complaint's allegations are true.  In such a case, just as in *Clark*, *Era*, and *Wilson*, the *Assignment* could be challenged at the option of either the assignor (typically, MERS) or the assignee, neither of which has disputed its validity here.

Finally, MERS, being on notice of the allegations concerning Ms. Krakoviak and MERS, has not challenged the *Assignment* or Ms. Krakoviak's executorial authority.  *See Clark,* 2014 WL 1259954, at *7 (noting the lack of challenge to the assignment at issue by the parties to it).  CMI also has not challenged (nor does it intend to challenge) the validity of the *Assignment*.  SUF No. 10.  Plaintiff cannot challenge that silent ratification.  Thus, standing is lacking under *Clark, Era, Mruk, Moura, Culhane,* and *Wilson* to challenge the *Assignment*, and summary judgment should enter for CMI.

**B.**     **Even if Standing Exists, the *Assignment* Complies with the *Mortgage* and Rhode Island Law, and is thus Valid.**

Even if this Court finds that standing exists, the *Assignment* cannot form the basis for a claim against CMI because it complies with Rhode Island law.  The express terms of the *Mortgage* permit MERS to act as mortgagee and to assign the *Mortgage*, and *Bucci*, *Mruk* and *Rutter* all confirm MERS' power to do so.  In other words, MERS can serve as mortgagee under

---

[3]  The terms "void" and "voidable" are mutually exclusive in this instance.  MERS has the authority to assign the mortgages that it holds as a matter of Rhode Island law.  *See* Section 3, *infra*.  Thus, all that is left is the *Complaint's* challenge to the *Assignment's* technical manner of execution, which cannot, as a matter of law, form the basis for voiding such assignment.  In other words, the challenges here are not capable of causing the *Assignment* to be void.

Rhode Island law. In that capacity, MERS is not required to simultaneously hold the promissory note, and it has the power to assign a mortgage, which it did in this case. For these reasons, as discussed below, summary judgment should enter for CMI.

### 1.     *MERS Can Serve as Mortgagee.*

It is well established that MERS can serve as mortgagee under Rhode Island law. In *Clark*, this Court held that MERS can serve as mortgagee where the mortgage was clear that MERS was the mortgagee acting solely as nominee for the lender. A mortgage is a contract like any other, and the lender and borrower can agree to appoint another entity to serve as mortgagee. *Bucci*, 68 A.3d at 1084-85. *Bucci* affirmed, under Rhode Island law, the ability of parties to a mortgage to name MERS as mortgagee and lender's agent to hold legal title to the mortgage securing the mortgagee's debt:

> This Court has recognized that, in such private transactions, "competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts [ ] unless a violation of the law or public policy is **clear and certain**." In our opinion, the designation of MERS as grantee of the mortgage, as nominee for the lender, was not a "clear and certain" violation of § 34-11-22.[4]

68 A.3d at 1085 (emphasis in original) (citations omitted).

Here, the *Mortgage*, which Plaintiff signed, plainly states that it was given to MERS "solely as nominee for the Lender, as hereinafter defined, and Lender's successors and assigns." SUF No. 5. Based on essentially identical contractual language, *Bucci* found that "MERS is the mortgagee because the Mortgage executed by plaintiffs so states and the fact that MERS acts in a nominee capacity for the lender . . . does not diminish MERS's role as mortgagee…." 68 A.3d at 1085 (quotations omitted). Under such circumstances, this Court has also agreed that MERS,

---

[4]   Section 34-11-22, entitled "Statutory power of sale in mortgage," provides Rhode Island mortgagors with the right to ensure that any foreclosure is done appropriately. *See Cosajay*, 2013 WL 591256, at *4.

therefore, is "the lawful and contractually designated mortgagee and nominee for the lender/noteholder." *In re Mortgage Foreclosure Cases*, 11-MC-88-M-LDA, 2013 WL 4735638, at *2 n.4 (D.R.I. Sept. 3, 2013). Because the *Mortgage* and the law authorized MERS to serve as mortgagee, Plaintiff attempts to undermine MERS as the mortgagee fails.

### 2. MERS Can Serve As Mortgagee Without Also Holding The Promissory Note.

Plaintiffs also claim that MERS cannot assign the *Mortgage* because it is not the lender on the *Note* secured thereby and does not hold the *Note*. (*Complaint* ¶¶ 9, 19-22.) But this precise argument has been uniformly rejected by this Court, the Rhode Island Supreme Court, and the First Circuit. *Clark*, 2014 WL 1259954 at *8 (citing *Bucci*, 68 A.3d at 1087; *Mruk*, 82 A.3d at 537 (affirming "that the note and the mortgage d[o] not need to be held by one entity."); *Culhane*, 708 F.3d at 292 ("We add that – short of the time of foreclosure – the MERS framework, which customarily separates the legal interest from the beneficial interest, corresponds with longstanding common-law principles regarding mortgages.") (applying Massachusetts law)).

Here, as in *Clark*, there are no allegations (and Plaintiff can prove no facts) that would violate the rule set forth in *Bucci*, *Mruk*, or *Culhane*. *Clark*, 2014 WL 1259954 at *8. There is nothing contained in the *Mortgage*, the *Note*, or any other related instrument that required MERS to hold the *Note* at any time. Thus, Plaintiff's argument that the *Assignment* is void because MERS was not the holder of the *Note* at the time of the *Assignment* must be rejected.

### 3. MERS Can Execute Mortgage Assignments.

#### a. The Mortgage Itself Grants This Power.

Plaintiff next claims that MERS lacked authority to assign the *Mortgage* to CMI. (*Complaint* ¶¶ 24, 32.) Yet, the plain terms of the *Mortgage* contradict these unfounded

allegations.  The Supreme Court of Rhode Island determined this precise issue in MERS's favor

first in *Bucci*, 68 A.3d at 1081, and more recently in *Mruk*, 82 A.3d at 537.  This Court in *Clark*

acknowledged these holdings, rejecting plaintiff's argument that MERS could not assign a

mortgage where the mortgage granted the power of sale to MERS and MERS' successors and

assigns.  2014 WL 1259954 at *9.

The mortgage language at issue in *Bucci* and *Mruk* is virtually identical to the language

of the *Mortgage*.  The *Mortgage* specifically states that Plaintiff "mortgage[s], grant[s] and

convey[s] **to MERS** (solely as nominee for Lender and Lender's successors and assigns) **and to**

**the successors and assigns of MERS** . . . the Statutory Power of Sale."  SUF No. 3.  (emphases

added); s*ee Mruk*, 82 A.3d at 538 (noting mortgage language "explicitly grant[ing] the power of

sale to MERS and *to the successors and assigns of MERS*") (emphasis in original).  Thus,

Plaintiff, through the *Mortgage*, expressly gave MERS and its successors and assigns the power

to foreclose.  Therefore, MERS had both an interest in the *Mortgage* and the power to assign

that interest.  To construe the *Mortgage* otherwise would render the terms that convey the

Property with the statutory power of sale to MERS's assigns a nullity, a result plainly

inconsistent with Rhode Island law.  *Cf. Dubis v. E. Greenwich Fire Dist.*, 754 A.2d 98, 101

(R.I. 2000) (declining to construe "unambiguous contract" outside of its ordinary meaning when

doing so "would produce an absurd result").

### b.      The Power to Assign Is Not Invalidated By Statute.

The *Complaint* alleges conclusorily that the *Assignment* is somehow void under *R.I. Gen.*

*Laws* §§ 34-11-1 and 34-11-24.  (*Complaint* ¶¶ 23, 24.)  But once again, numerous courts,

including this one, have upheld the authority of MERS to assign a mortgage despite the existence

of *R.I. Gen. Laws* §§ 34-11-1 and 34-11-24.  *See Clark*, 2014 WL 1259954 at *8 (noting that

arguments made against the MERS system have been "uniformly rejected by the Rhode Island

Supreme Court and the First Circuit"): *In re Mortg. Foreclosure Cases*, 2013 WL 4735638, at *2 n.4 ("While the *Bucci* decision did not address the specific issue of MERS's authority to assign a mortgage, it follows from the reasoning in *Bucci* that MERS – as the lawful and contractually designated mortgagee and nominee for the lender/noteholder may also lawfully assign its interest in a mortgage" (quoting *Akalarian v. Nation One Mtg. Co.,* 2013 WL 3971148, at *3 (R.I. Super. Ct. July 29, 2013)); *Rutter,* 86 A.3d at 382-83 (assignment of mortgage valid and not in violation of *R.I. Gen. Laws* § 34-11-1 where mortgage "directly listed MERS and its assignees as having the statutory power of sale, [and] therefore permitting MERS to assign the [m]ortgage and permitt[ed] the assignee to foreclose").  *Rutter* also explicitly rejected plaintiffs' argument that the assignment violated *R.I. Gen. Laws* § 34-11-1 because there was insufficient evidence that the signatories thereto lacked the requisite authority.  *Rutter,* 86 A.3d at 382-83.

Thus, the only rational reading of the statutes, *Bucci* and *Rutter* is that there is no statutory bar to MERS, as mortgagee, executing assignments of mortgages it holds.  Here, the conclusory and unsubstantiated allegations of the *Complaint* (¶¶ 8-15, 19, 23, 27) do nothing to require a different conclusion.

### 4. *The Assignment Was Properly Executed and Is Valid.*

Plaintiff claims that the *Assignment* is invalid because the person who executed it lacked authority to do so.  Specifically, the *Complaint* alleges that Kim Krakoviak is not a vice president or assistant secretary of MERS, and she "did not have the authority to assign."  (*Complaint* ¶¶ 10, 11.)  But these allegations contradict the *Assignment* itself.  As in *Clark*, the *Assignment* clearly identifies MERS as assignor and CMI as assignee.  2014 WL 1259954 at *7.  The signature block shows that the *Assignment* was made by MERS and that Ms. Krakoviak signed it in her capacity as "Assistant Secretary" of MERS.  SUF No. 9.  Because Plaintiff has no proof to

the contrary, as in *Clark*, any argument that Ms. Krakoviak lacked the authority to assign the *Mortgage* for MERS should be rejected.

Furthermore, an assignment executed before a notary public by someone identified as a MERS officer has been held facially valid.  *See Hoecke v. First Franklin Fin. Corp.*, 2013 WL 1088825, *4 (R.I. Super. Ct. March 7, 2013).   *Hoecke* observed that "the assignment of the Mortgage interest . . . executed by an individual who represented to a Notary Public that she was . . . authorized to execute the assignment on behalf of MERS, the nominee for the original lender . . . conforms to the statutory form of assignments of a mortgage interest as set forth in § 34-11-12."  *Id.*   There is no indication that anything more is required. *Mruk*, 82 A.3d at 533 (assignment "signed and stamped by a notary public" is "significant"); *see, e.g.*, *R.I. Gen. Laws* § 34-11-12 (statutory form of assignment under Rhode Island law); *R.I. Gen. Laws* § 34-11-24 (effect of assignment substantially following the statutory form of assignment).  The execution of the *Assignment* by Kim Krakoviak on MERS' behalf is thus presumed to be valid.

Finally, MERS properly assigned its interest in the *Mortgage* to CMI under Rhode Island law.  *Rhode Island General Laws* § 34-11-1 requires only a signed and delivered writing to convey title to real property, and a recording of the instrument conveying title is not necessary to make the conveyance effective.  Here, the *Assignment* is a writing, signed by the assignor, with an identification of the authority to assign, delivered to the assignee, and recorded.  SUF No. 7 and Exh. A-3.   Neither MERS nor CMI is challenging the *Assignment*.  SUF No. 10.  As such, Plaintiff cannot prove that the *Assignment* fails to satisfy *R.I. Gen. Laws* § 34-11-1.  As a result of the *Assignment*, CMI is the mortgagee and may exercise all powers associated with the *Mortgage*, including the statutory power of sale.

### C.    As a Result of a Valid *Assignment*, CMI Can Foreclose Because the *Mortgage* Granted the Power to Foreclose to MERS and its Successors and Assigns.

Plaintiff claims that only Prime, listed as the original "Lender" in the *Mortgage*, can foreclose the Property.  (*Complaint*, ¶¶ 29-35, 39-41.)  To support this theory, Plaintiff, while citing to a paragraph 22 (which does not exist), appears to rely upon paragraph 18 of the *Mortgage* which states that "Lender may invoke the STATUTORY POWER OF SALE."  (*Id.*, ¶ 31 (incorrectly citing *Mortgage*, ¶ 22).  But a cursory review of the *Mortgage* reveals that it expressly provides that parties other than the original lender, including MERS and its assigns, may foreclose.  Specifically, it states:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but; if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) ***has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property***; and to take any action required of Lender . . . ."

SUF No. 3. (emphasis added).  Accordingly, Plaintiff contractually agreed to grant MERS (a party other than the original "lender") the power of sale.[5]  Plaintiff cannot prove otherwise.

Plaintiff's argument that only the party originally listed as the "Lender" may foreclose has been repeatedly rejected.  Numerous cases, including *Clark*, establish that the provision at issue, which grants the statutory power of sale to "MERS, as nominee for [the lender's] successors and assigns" is valid.  *See, e.g., Clark*, 2014 WL 1259954 at *8; *Bucci*, 68 A.3d at 1087; *Payette*, 2011 WL 3794700, slip op. at 10-11; *Mruk*, 82 A.3d at 537; *Rutter*, 86 A.3d at 382-83.  In *Bucci*, the Rhode Island Supreme Court analyzed identical language and, after reciting the same two mortgage provisions that Plaintiff has quoted in the *Complaint*, stated:

---

[5]  Although CMI will conduct this foreclosure, the *Complaint* includes allegations contesting MERS' right to foreclose.  *Complaint* ¶¶ 36-38, 45.  For the sake of completeness and context, Defendants have addressed this argument.

> These provisions are clear and leave no room for interpretation. The plaintiffs explicitly granted the statutory power of sale and the right to foreclose to MERS, and consequently, MERS has the contractual authority to exercise that right.

*Id.* at 1081.   There can be no dispute that, under the express terms of the *Mortgage*, MERS has the right to invoke the statutory power of sale and foreclose on Plaintiff in accordance with *R.I. Gen. Laws* § 34-11-22.[6]   Because MERS had the power to assign the *Mortgage*, and did so to CMI, CMI now has that same right.

## D.     CMI Can Foreclose Because Plaintiff is in Default Under the *Mortgage*.

Plaintiff is in default of both the *Note* and *Mortgage*.  *See* SUF No. 14.  As a result, he is subject to foreclosure.  *See* SUF No. 15 (allowing foreclosure to occur in event of default).

Plaintiff's only retort is the self-serving allegation that "[t]he note is current or has been satisfied by another third party." (*Complaint* at ¶ 51.)[7]  "It is, however, crystal clear that bare allegations in a party's unsworn pleadings or in a lawyer's brief do not carry weight in the summary judgment calculus." *Gulf Coast Bank & Trust Co. v. Reder*, 355 F.3d 35, 39 (1st Cir. 2004) (citing *Rogan v. City of Boston*, 267 F.3d 24, 29 (1st Cir. 2001); *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994).  This Court analyzed the same baseless allegation in *Clark* and observed that "[i]t is a bald assertion if ever there was one."  2014 WL 1259954 at *10.  In short, Plaintiff cannot prove that he is not in default under the *Note* and *Mortgage*, and he is, therefore, subject to foreclosure.

---

[6]  The United States Court of Appeals for the Fourth Circuit also rejected the "original Lender" theory advanced by Plaintiff.  *See Horvath v. Bank of New York, N.A.*, 641 F.3d 617, 624-26 (4th Cir. 2011).  *Horvath* relied, in large part, on the presence of other provisions in the mortgage that it could be "'sold . . . without prior notice to Borrower'" and that "'the covenants and agreements of this Security Instrument shall bind . . . and benefit the successors and assigns of Lender.'"  *Id.* at 619-20.

[7]  In addition to being insufficient to defeat a motion for summary judgment, no thread of truth exists to support this self-serving allegation, and the same is, respectfully, sanctionable under Rule 11 or other applicable rules.  Furthermore, even if the *Note* was, in fact, brought current by some third party, there is no allegation that such an occurrence acted to nullify Plaintiff's contractual obligation to repay the *Note* and comply with the terms of the *Mortgage* – those obligations would not have simply "disappeared," as Plaintiff wishes.

### E.      CMI Can Foreclose Because It Has Standing to Do So.

A servicer has standing to foreclose in Rhode Island if it holds the mortgage and either holds the note or acts on the noteholder's behalf at the time of foreclosure.  *Bucci*, 68 A.3d at 1089; *Rutter*, 86 A.3d at 382; *Mruk*, 82 A.3d at 538.   Here, CMI holds the *Mortgage* by assignment.  SUF No. 7; *see Section* B, *supra*.   CMI also acts on its own behalf as owner of the *Note*.  SUF Nos. 11, 13.  Thus, CMI has standing to proceed with foreclosure.

## II.      CMI IS ENTITLED TO SUMMARY JUDGMENT ON COUNT II (QUIETING TITLE).

Summary judgment should be granted to CMI on Count II for the sole reason that no foreclosure has yet occurred.  SUF No. 20.  Thus, Plaintiff is still record owner of the Property.  Summary judgment is also appropriate because CMI can prove that it holds the *Mortgage* by assignment and also services the *Mortgage* on behalf of the *Note* holder itself.  SUF Nos. 7, 11 and 13.  These facts are sufficient to prove that CMI "has the right to foreclose on" the Property.  *Clark*, 2014 WL 1259954 at *10; *see also* Section E, *supra* (establishing CMI's standing).

## III.     CMI IS ENTITLED TO SUMMARY JUDGMENT ON COUNT III (PUNITIVE DAMAGES).

Punitive damages are available under Rhode Island law only where there is "evidence of such willfulness, recklessness or wickedness, on the part of the party at fault, as amount[s] to criminality that should be punished."  *Fenwick v. Oberman*, 847 A.2d 852, 854 (R.I. 2004); *Cady v. IMC Mortg. Co.*, 862 A.2d 202, 220 (R.I. 2004).   The evidence must indicate that the defendant acted maliciously and in bad faith.  *Sarkisian v. NewPaper, Inc.*, 512 A.2d 831, 836 (R.I. 1986).   Whether the facts of a case suffice to support a punitive damages award is a question of law for the court.  *Palmisano v. Toth*, 624 A.2d 314, 318 (R.I. 1993).  Here, there is no evidence on the record that CMI acted maliciously, in bad faith, or with the intent to harm.

*See id.*  Because CMI is entitled to summary judgment on Counts I and II, "no discussion of . . .

punitive damages claim is merited."  *Clark*, 2014 WL 1259954 at *11.

## <u>CONCLUSION</u>

For the foregoing reasons, summary judgment should enter in favor of CMI on all counts.


CITI MORTGAGE, INC.

By its attorneys,

/s/ Joseph A. Farside, Jr.
Joseph A. Farside, Jr. (#7559)
Krystle Guillory Tadesse (#7944)
EDWARDS WILDMAN PALMER LLP
2800 Financial Plaza
Providence, RI  02903
(401) 274-9200
(401) 276-6611 (Fax)
jfarside@edwardswildman.com
ktadesse@edwardswildman.com

Date: July 18, 2014

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that on the 18th day of July, 2014, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.

/s/ Joseph A. Farside, Jr.